```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

JOAN C. MAXIM,                     )
                                   )
         Plaintiff,                )
                                   )
    vs.                            )    Civil Action No. 05-1616
                                   )
JOANNE B. BARNHART,                )
COMMISSIONER OF SOCIAL SECURITY,   )
                                   )
         Defendant.                )

<u>O R D E R</u>

AND NOW, this 5th day of March, 2007, upon consideration of Defendant's Motion for Summary Judgment (document No. 8) filed in the above-captioned matter on March 14, 2006,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 5) filed in the above-captioned matter on February 16, 2006,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.      **Background**

On May 23, 2003, Plaintiff, Joan C. Maxim, filed her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (R. 92-95, 112). Specifically, Plaintiff claimed that she became disabled on August 28, 1999, due to depression and agoraphobia. (R. 16, 93, 112).

After being denied initially, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on January 6, 2005. (R. 25-65). In a decision dated January 19, 2005, the ALJ denied Plaintiff's request for benefits. (R. 16-22). The Appeals Council declined to review the ALJ's decision on October 14, 2005. (R. 5-8). On November 22, 2005, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.     **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g));

Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy....'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 920.921(a). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to step three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. See 20 C.F.R. § 416.920(e). The claimant bears the burden of demonstrating an inability to return to his past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's residual functional capacity, his age, education, and past work experience. Id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III.   The ALJ's Decision

In the present case, the ALJ found that Plaintiff met the non-disability requirements set forth in section 216(i) of the Social Security Act and that she is insured for disability benefits through December 31, 1999. (R. 17, 21). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 17, 21). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had a severe impairment, specifically, panic disorder with agoraphobia and mood swings, but concluded that her impairment did not meet any of the listings that would satisfy step three. (R. 17-18, 21).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform work at any exertional level that did not require: more than simple, routine, repetitive tasks, with one- or two-step instructions, performed in a low-stress environment, defined as work requiring few decisions; or more than occasional contact with the public, coworkers, and supervisors.

(R. 19). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to step five. (R. 18-19, 21). The ALJ then used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs, including cleaner, packer, and assembler, that exist in significant numbers in the national economy on or before December

31, 1999. (R. 20-22). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 22).

IV.     **Legal Analysis**

In the present case, Plaintiff raises two arguments. First, she argues that the ALJ's decision is not supported by substantial competent evidence for two reasons: (1) he erred in finding that Plaintiff's inability to attend medical appointments did not support a finding that she could not sustain work within the scope of her RFC; and (2) he failed to give proper weight to the medical opinion of Plaintiff's treating psychiatrist, Dr. Henry C. Groff. Specifically, Plaintiff contends that the ALJ erred in giving greater weight to the opinion of the non-treating, non-examining state agency examiner than to Dr. Groff's opinion. Plaintiff's second argument is that the ALJ erred in not obtaining the opinion of a medical advisor, pursuant to S.S.R. 83-20, to ascertain the date of onset of her disability. Because the Court believes that the record is unclear as to how the ALJ determined Plaintiff's RFC and as to whether proper weight was given to the treating physician's opinion in this case, it will remand the case for further consideration.

Although Plaintiff doesn't specifically raise the issue, the Court, in considering Plaintiff's claims regarding the weight given to Dr. Groff's opinion, was forced to consider the RFC determination. In doing so, the Court discovered that it was unable

to determine, from the ALJ's decision, how he came up with the RFC in this case.

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Id. at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also SSR 96-8p, 1996 WL 374184 (S.S.A.), at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Here, the ALJ's discussion of Plaintiff's RFC is insufficient because he never describes how the evidence supports his RFC finding. Although he states that he has given "more weight to the opinion of the state agency that the claimant was not disabled on or before December 31, 1999" (R. 19), he does not

specifically state that he relied on this opinion in formulating the RFC. Indeed, the state agency physician, Dr. Raymond Dalton, did not perform an RFC analysis, but rather completed a Psychiatric Review Technique primarily for the purpose of determining whether Plaintiff's impairment met a listing. He did not specifically opine as to Plaintiff's RFC. (R. 186-99). While, certainly, the ALJ can consider Dr. Dalton's opinion in determining the RFC, he does not explain how the opinion relates to Plaintiff's RFC. In fact, the ALJ does not even actually state that he has relied on Dr. Dalton's opinion in the RFC determination, stating rather that he gave greater weight to Dr. Dalton's finding that Plaintiff was not disabled. (R. 19).

The ALJ does not appear to rely on Dr. Groff's August 8, 2003 opinion in determining Plaintiff's RFC; to the contrary, he discusses at some length why he is not relying on Dr. Groff's opinion. (R. 19). As to Dr. Groff's records, at best, the ALJ indicates that they "do not show that the claimant was not capable of the limited range of work specified in the RFC adopted here." Id. Therefore, he does not indicate whether he relied on these records in formulating the RFC, but merely that they were not inconsistent with it. Likewise, although he states earlier in the decision that the medical records from St. Clair Memorial Hospital do not show a severe impairment before December 31, 1999, he does not state that he relied on these records in formulating the RFC.

Thus, the ALJ discusses the evidence that he does not rely upon, and the evidence that is not inconsistent with his finding, but not the actual evidence that he does rely upon in determining Plaintiff's RFC. It may well be that substantial evidence does, indeed, support the ALJ's RFC determination. However, since he does not specifically explain how precisely he arrived at his determination, this Court is in no position to determine if this is so, making remand appropriate.

Moreover, even in his discussion of Dr. Groff's records and opinions, it is not clear that proper weight was given to his opinion. As Plaintiff correctly asserts, when assessing a plaintiff's application for benefits, the opinion of the plaintiff's treating physician is to be afforded significant weight. See Fargnoli, 247 F.3d at 43; Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)(citing 20 C.F.R. § 404.1527). In fact, the regulations provide that a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the Commissioner may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the Commissioner's own judgment or speculation, although he may afford

a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429.

The opinions of treating physicians are given greater deference because these doctors are "employed to cure and ha[ve] a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). This is especially true "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (citing Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). In fact, the applicable regulations acknowledge the special ability of a treating physician when assessing a plaintiff's condition and provide as follows:

> [treating physicians] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(d)(2).

In short, an ALJ may not reject a treating physician's opinion based on his or her own credibility judgments, speculation or lay opinion. See Plummer, 186 F.3d at 429. Rather, the ALJ

11

must provide specific and legitimate reasons for doing so. Fargnoli, 247 F.3d at 43.

As the ALJ acknowledges in his decision, Dr. Groff, in his August 8, 2003 opinion, found more extreme restrictions than those reflected in the RFC; specifically, he found extreme restrictions in Plaintiff's ability to interact with the public, supervisors, and co-workers, and to respond appropriately to work pressures and changes in a routine work setting. (R. 184). The ALJ rejects this opinion, however, at least in part because Dr. Groff "stated the limitations in present tense and did not state that the problem was that severe on or before December 31, 1999." (R. 19). He also states that Dr. Groff did not indicate when Plaintiff's symptoms became severe. Id.

However, Dr. Groff's August 8 opinion indicated that the period during which he had treated Plaintiff (as of that time) was February 15, 1995 through August 7, 2003. (R. 178). In addition, he stated that "[Plaintiff] has not been able to work or function in [a] meaningful fashion since I began seeing her in 1995." (R. 181). While, to be sure, Dr. Groff generally used present tense in his report, he did not indicate that the restrictions he believed Plaintiff to have were only applicable as of that date and not earlier. Indeed, if he believed that Plaintiff continued to have these limitations as of the date of the report, it would have been inappropriate to use past tense. The mere use of present tense,

12

therefore, cannot constitute substantial evidence that Dr. Groff's opinion regarding the severity of Plaintiff's restrictions in the August 8 report applied only after 1999.

In relying merely on verb tense, the ALJ fails to address other language in Dr. Groff's August 8 opinion that may provide insight as to the applicable time period for Plaintiff's restrictions according to Dr. Groff. A more than reasonable inference could be drawn that the restrictions were meant to cover the entire period Dr. Groff had treated Plaintiff, considering he provided the applicable dates as February 15, 1995 through August 7, 2003, and never indicated that the limitations he found covered anything less than that entire period, and considering his statement that Plaintiff had been unable to work since he first saw her in 1995.[1] The ALJ fails to address these facts, relying instead on verb tense and Dr. Groff's failure to specifically state whether or not the restrictions he found covered the entire period of treatment or not. This analysis is simply insufficient to determine when the restrictions found by Dr. Groff are meant to apply.

To be sure, the ALJ need not necessarily give controlling weight to Dr. Groff's opinion, and it is true that where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to

---

[1] Indeed, Dr. Groff's December 22, 2004 opinion that Plaintiff had been unable to sustain work since December 31, 1999 would further support the inference. (R. 239).

13

credit,"[2] but he "'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Plummer</u>, 186 F.3d at 429). <u>See</u> <u>also</u> <u>Dula v. Barnhardt</u>, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). The ALJ rejected Dr. Groff's opinion as to Plaintiff's restrictions on mere speculation as to the dates as of which Dr. Groff intended those restrictions to apply. As discussed above, he did not address the contrary evidence suggesting that Dr. Groff's opinion covered the period during which Plaintiff was covered for DIB. He therefore rejected the evidence for the wrong reason. As such, since substantial evidence does not support the primary reason given by the ALJ for apparently giving less weight to Dr. Groff's opinion, remand is appropriate.[3]

The Court expresses no opinion as to what weight should ultimately be given to Dr. Groff's opinion, or as to whether there are any reasons for finding, as the ALJ did, that Plaintiff's restrictions were less severe as of December 31, 1999 than as set

---

[2] The Court emphasizes that, although the ALJ can credit Dr. Dalton's opinion, he can only give this opinion weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by Dr. Dalton. SSR 96-6p, 1996 WL 374180 (S.S.A.), at *2 (July 2, 1996). In general, "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him." <u>Morales</u>, 225 F.3d at 320.

[3] As to Plaintiff's argument that the ALJ should have obtained the opinion of a medical advisor pursuant to SSR 83-20, the Court notes that it is unclear from the record as to whether such an advisor is necessary in this case. On remand, the ALJ should consider whether a medical advisor is necessary in light of this Order.

forth in Dr. Groff's August 8 opinion; it remands this case because the reason given was not supported by substantial evidence. Nor does the Court express any opinion as to whether the ALJ's RFC determination could be supported by the record. It is the lack of meaningful explanation that mandates the remand in this case.

**V.      Conclusion**

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC and the weight he gives to the treating physician's opinion in this case are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

                                             s/Alan N. Bloch
                                             United States District Judge

ecf: Counsel of record